IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLIMPSE LLC (DBA SKYLIGHT),<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 1:26-cv-07475<br><br>Judge Charles P. Kocoras<br><br>Magistrate Judge Laura K. McNally |

**<u>DEFENDANT CANUPDOG OFFICIAL'S MOTION TO MODIFY THE PRELIMINARY INJUNCTION AND ASSET RESTRAINT AND MEMORANDUM IN SUPPORT</u>**

Defendant Canupdog Official, Seller ID A3NHH11L24WT7R ("Defendant"), respectfully moves pursuant to Paragraph 8 of the Preliminary Injunction Order [Dkt. 21] and Federal Rule of Civil Procedure 65 to modify the relief entered on July 17, 2026. Defendant requests modification based on the seller-specific and now-adversarial record presented with this Motion. Defendant disputes that it infringed Plaintiff's asserted intellectual property and does not seek authorization to engage in conduct prohibited by the Court's orders. Without admitting infringement or that Plaintiff owns a valid right in the asserted phrase, Defendant will not use the phrase "DROP THE STRESS. NOT THE BALL." going forward and intends to continue lawful sales in compliance with the Court's orders.

The requested relief follows two related grounds. First, Plaintiff's fixed comparison exhibits raise issues for adjudication, but they do not establish that every element of the historical product and advertising is protectable, that each required element of Plaintiff's trade-dress and trademark claims has been shown on a seller-specific record, or that the full account-wide relief

in Dkt. 21 remains necessary. Second, even if the Court concludes that a limited conduct injunction should remain while historical liability is litigated, Defendant's sworn commitment to comply with the Court's orders, refrain from using the asserted phrase, preserve relevant materials, and avoid any effort to evade the injunction eliminates the need to suppress lawful future sales or restrain the entire account.

Defendant therefore asks the Court to release or narrowly limit the account-wide asset restraint, restore ordinary Amazon account functions and non-accused listings, and permit Defendant to access and operate the identified ASINs in compliance with the Court's orders. If Amazon requires a replacement ASIN, Defendant asks the Court to confirm that a replacement listing complying with the Court's orders is not prohibited by Dkt. 21. In the alternative, Defendant requests expedited, seller-specific briefing and a prompt hearing concerning the scope of the continuing injunction and restraint.

## BACKGROUND

1. Plaintiff filed its ex parte motion for a temporary restraining order on June 30, 2026. The Court granted the motion on July 7, 2026. [Dkts. 8, 11–12].

2. Plaintiff filed its motion for a preliminary injunction on July 14, 2026. [Dkts. 15–17]. Counsel appeared for Defendant on July 15, 2026. [Dkt. 18].

3. On July 16, 2026, Plaintiff noticed its preliminary-injunction motion for presentment on July 21, 2026, at 9:50 a.m. [Dkt. 19]. On July 17, 2026, before the noticed presentment, the Court granted the motion and struck the July 21 hearing. [Dkts. 20–21]. Defendant's seller-specific evidence and undertakings were therefore not before the Court when the Preliminary Injunction was entered. Dkt. 21 also states that the Court made its personal-jurisdiction determination "in the absence of adversarial presentation." Dkt. 21 at 1.

4. Paragraph 1 of Dkt. 21 prohibits use of Plaintiff's asserted intellectual property and products that are not colorably different from the products identified in Plaintiff's exhibits. Paragraphs 2 and 6 restrain all connected accounts and funds. Paragraph 8 expressly permits an affected defendant to move to dissolve or modify the Order.

5. Based on the most recent Amazon records available to Defendant, approximately $27,155.50 associated with the storefront is presently restrained pursuant to the Court's orders. The restraint has also prevented Defendant from using the account normally while this action remains pending.

6. Dkt. 21 identifies seven ASINs for Defendant: B0DCBVBTJ1, B0FN7SKNXD, B0FFS7CHXY, B0FPXC4PLY, B0FKGHF3TL, B0FPXBX9GV, and B0FNWGQDWP. Defendant seeks restoration of access to its Amazon account and the identified ASINs so that it may resume normal account operations and lawful sales in compliance with the Court's orders.

7. Plaintiff's evidence identifies portions of the historical advertising, including the "All-in-One Organization" advertisement and the phrase "DROP THE STRESS. NOT THE BALL." Defendant disputes Plaintiff's infringement allegations. Without admitting infringement or that Plaintiff owns a valid right in the asserted phrase, Defendant will not use that phrase going forward. The issue presented by this Motion is whether Plaintiff's historical evidence justifies continuing to restrain Defendant's entire account, nonaccused listings, funds, and lawful future sales.

8. The accompanying declaration confirms that Defendant disputes Plaintiff's infringement allegations, will not use the asserted phrase going forward, will preserve relevant materials, will comply with the Court's orders, and will not use another account or business to evade the injunction or conceal assets.

## LEGAL STANDARD

A preliminary injunction is an extraordinary, prospective remedy. The movant must show a likelihood of success on the merits, that legal remedies are inadequate and irreparable harm is likely without an injunction, and that the balance of harms and the public interest favor the requested relief. *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 843–44 (7th Cir. 2023). The scope of relief must correspond to the showing made. Dkt. 21 itself permits an affected defendant to seek dissolution or modification. Dkt. 21 ¶ 8. A continuing injunction is also subject to adaptation as later events change the need for prospective relief. *System Federation No. 91 v. Wright*, 364 U.S. 642, 647 (1961).

## ARGUMENT

### I. THE COURT SHOULD CONSIDER THE PRESENT ADVERSARIAL AND SELLER-SPECIFIC RECORD.

When Dkt. 21 was entered, Defendant had appeared, but the noticed presentment had not yet occurred and Defendant's seller-specific evidence was not before the Court. The Court granted Plaintiff's motion four days before the July 21 presentment and struck that hearing. [Dkt. 20]. Defendant raises this procedural history only to explain why the present evidence and sworn undertakings have not previously been considered.

Paragraph 8 of Dkt. 21 expressly authorizes an affected defendant to seek dissolution or modification. The present Motion provides the Court with a seller-specific record and a practical basis to tailor the prospective relief without adjudicating historical liability at this stage.

## II. PLAINTIFF'S FIXED EVIDENCE DOES NOT JUSTIFY CONTINUATION OF THE PRELIMINARY INJUNCTION IN ITS PRESENT BREADTH.

### A. The trade-dress record leaves substantial questions concerning functionality, secondary meaning, and confusion.

Plaintiff defines its asserted trade dress as a combination of a narrow top panel, a narrow side or bottom panel, pastel color-coded calendar events, rounded rectangular event blocks, and smaller darker profile indicators. Dkt. 21 at 2. Plaintiff's comparison chart shows visual similarities between portions of the historical interfaces. Complaint Ex. 7. Similarity alone, however, does not establish each element required for product-design trade dress.

Functional product features are not protectable trade dress. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29, 32–33 (2001). Color-coding users, arranging navigation panels, and displaying calendar events in labeled blocks may serve information-organizing and navigation functions. In addition, product design is not inherently distinctive and requires secondary meaning. *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 212–16 (2000). Plaintiff alleges substantial sales and advertising, but its five-page preliminary-injunction memorandum does not separately analyze functionality, secondary meaning, or why consumers would treat the asserted interface combination, rather than the SKYLIGHT brand, as a source identifier.

Likelihood of confusion also requires assessment of the overall marketplace presentation. See *Grubhub*, 80 F.4th at 847–49. The fixed screenshots prominently display the CANUPDOG name and identify Defendant's product as a Canupdog product. Complaint Ex. 1. The preliminary-injunction memorandum does not identify a consumer survey or seller-specific evidence of actual confusion. These issues need not be finally resolved now, but they counsel against treating every digital-calendar interface as presumptively infringing or maintaining

account-wide relief that prevents Defendant from conducting lawful sales in compliance with the Court's orders.

### B. The copyright evidence supports a dispute over historical advertising, not the present breadth of product-wide relief.

Plaintiff's Exhibit 8 identifies alleged overlap in portions of the historical "All-in-One Organization" advertising, while Exhibit 9 concerns the phrase "DROP THE STRESS. NOT THE BALL." in a Canupdog-branded advertisement. Defendant disputes that Plaintiff's evidence establishes copyright infringement and does not ask the Court to authorize any conduct prohibited by the Court's orders. Without admitting infringement or that Plaintiff owns a valid right in the asserted phrase, Defendant will not use that phrase going forward.

Copyright protects original expression, while ideas, procedures, processes, systems, and methods of operation are not protected. 17 U.S.C. § 102(b); see *Feist Publications, Inc. v. Rural Telephone Service Co*., 499 U.S. 340, 348–51 (1991). Words, short phrases, titles, and slogans are not independently copyrightable. 37 C.F.R. § 202.1(a). The exact slogan may support Plaintiff's trademark theory, but the slogan alone does not define the protectable scope of an advertising copyright. Likewise, Plaintiff cannot obtain a copyright monopoly over the idea of showing a digital calendar on multiple devices, event synchronization, or color-coded family schedules. The protectable scope must be determined by comparing original expression as a whole.

Thus, even assuming Plaintiff can show a likelihood of success as to portions of the historical advertising, that showing does not support continued suppression of lawful future products and advertising that comply with the Court's orders. Historical copyright liability and damages can be litigated on a preserved evidentiary record without restraining Defendant's entire account and all future sales.

### C. The identical slogan presents a trademark issue, but the present record does not support the full scope of relief imposed.

Plaintiff alleges that the historical advertisements used the phrase "DROP THE STRESS. NOT THE BALL." Without admitting infringement or that Plaintiff owns a valid right in the asserted phrase, Defendant will not use that phrase going forward. Likelihood of confusion must nevertheless be evaluated based on the full marketplace presentation, not textual identity alone. *Grubhub*, 80 F.4th at 847–49. The fixed screenshots display the CANUPDOG name, and the preliminary-injunction papers do not identify a survey or seller-specific evidence of actual confusion. These considerations do not require the Court to reject Plaintiff's trademark claim at this stage, but they support limiting relief to the accused phrase and any conduct ultimately found unlawful rather than suppressing all future sales and account functions.

## III. THE CURRENT RECORD DOES NOT SHOW A NEED FOR CONTINUING, BROAD IRREPARABLE-HARM RELIEF.\

The relevant question is the likelihood of future harm after modification. Defendant's declarant has sworn that Defendant will not use the phrase "DROP THE STRESS. NOT THE BALL." going forward, will preserve relevant materials, will comply with the Court's orders, and will not use another account or business to evade the injunction or conceal assets. Defendant intends to conduct only lawful sales in compliance with the Court's orders. Plaintiff remains free to seek relief if Defendant violates the modified injunction.

The Lanham Act provides a rebuttable presumption of irreparable harm after a plaintiff establishes likelihood of success. 15 U.S.C. § 1116(a); *Grubhub*, 80 F.4th at 843–44. Whatever force that presumption has concerning the historical conduct alleged by Plaintiff, Defendant's sworn commitment to refrain from using the asserted phrase, preserve relevant evidence, comply with the Court's orders, and avoid any effort to evade the injunction reduces the risk of future

harm. Any historical sales, profits, or damages remain measurable through Amazon records and discovery. The present record therefore does not require continued suppression of lawful future sales or an account-wide restraint to prevent future infringement.

## IV. THE BALANCE OF HARMS AND THE PUBLIC INTEREST FAVOR NARROWER, COMPLIANCE-BASED RELIEF.

Plaintiff remains protected by the continuing provisions of Dkt. 21, and it may seek further relief if Defendant violates the modified injunction. Defendant, by contrast, presently cannot use its account normally, access restrained funds, or conduct lawful sales through the identified listings. A narrower order would preserve Plaintiff's claims concerning historical conduct while avoiding unnecessary interference with lawful commerce. The public interest favors preventing confusion and protecting original expression, but it also favors lawful competition and relief tailored to the conduct supported by the record.

## V. N ALL EVENTS, DEFENDANT'S SWORN COMPLIANCE COMMITMENTS WARRANT MODIFICATION.

Even if the Court concludes that Plaintiff has shown a likelihood of success concerning some historical materials, the injunction should be modified prospectively. Defendant disputes Plaintiff's infringement allegations but has sworn that it will not use the phrase "DROP THE STRESS. NOT THE BALL." going forward, will preserve relevant materials, will comply with the Court's orders, and will not use another account or business to evade the injunction or conceal assets. Defendant intends to continue only lawful sales in compliance with the Court's orders.

A narrower order would protect Plaintiff against future violations without converting an intellectual-property injunction into a prohibition on Defendant's lawful participation in the

digital-calendar market. This approach is consistent with the continuing authority recognized in System Federation and the express modification procedure in Dkt. 21 ¶ 8.

## VI. THE ACCOUNT-WIDE ASSET RESTRAINT SHOULD BE DISSOLVED OR, AT MINIMUM, NARROWLY TAILORED.

Paragraphs 2 and 6 of Dkt. 21 restrain all money and assets connected to Defendant's accounts, not only proceeds attributable to the accused ASINs. Plaintiff's preliminary-injunction memorandum states generally that Defendants "may attempt" to transfer funds offshore, but identifies no transfer by this Defendant, no seller-specific profit amount, and no tracing connecting the restrained funds to the accused listings. Dkt. 16 at 4.

Although Plaintiff seeks an accounting of profits, any prejudgment asset restraint should bear a reasonable relationship to the equitable relief Plaintiff could ultimately recover from this Defendant. See CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002). Plaintiff's preliminary-injunction papers provide no seller-specific calculation of Defendant's allegedly attributable profits and do not trace the restrained funds to the accused ASINs.

Defendant has appeared, retained counsel, agreed to preserve relevant financial and listing records, and sworn that it will comply with the Court's orders and will not use another account or business to evade the injunction or conceal assets. The Court should release the account-wide restraint. If the Court concludes that some reserve remains appropriate, Defendant respectfully requests a seller-specific accounting, restoration of ordinary account functions and nonaccused listings, and release of all funds beyond an amount supported by competent evidence of a reasonably necessary equitable reserve.

## CONCLUSION

For these reasons, Defendant Canupdog Official respectfully requests an order: (1) modifying Dkt. 21 on the present adversarial record; (2) dissolving the account-wide asset restraints in Paragraphs 2 and 6 as applied to Defendant, or alternatively limiting any reserve to a seller-specific amount supported by evidence; (3) restoring ordinary account access, disbursement functions, and non-accused listings; (4) permitting Defendant to access and operate the identified ASINs in compliance with the Court's orders; (5) permitting a replacement ASIN that complies with the Court's orders if required by Amazon; and (6) granting expedited seller-specific proceedings and any further relief the Court deems appropriate.

Dated: August 7, 2026

Respectfully Submitted

/s/ Alexander Warden

Alexander Warden
West Atlantic Law Firm, PLLC
104 West 40th Street, Suite 400
New York, NY 10018
(347) 420-0279
alexander.warden@walflaw.com
Counsel for Defendant Canupdog Official

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 7, 2026, a true and correct copy of the foregoing was filed electronically with the Clerk of Court and served on all counsel of record through the Court's CM/ECF system.

/s/ Alexander Warden
Alexander Warden